Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Appellant,

v.

Marcelle H. HUYCKE, Appellee.

No. 16822.

United States Court of Appeals Ninth Circuit.

Nov. 30, 1960.

George C. Doub, Asst. Atty. Gen., Samuel D. Slade, Donald H. Green, Attys., Department of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Portland, Or., for appellant.

Hutchinson, Schwab & Burdick, Dwight L. Schwab, Samuel B. Weinstein, Portland, Or., for appellee.

Before STEPHENS, JERTBERG and KOELSCH, Circuit Judges.

STEPHENS, Circuit Judge.

■ The sole question raised on this appeal is whether pursuant to 42 U.S.C. A. § 405(g), the District Court was correct in deeming unsupported by substantial evidence the decision of the Referee of the Social Security Administration that appellee's decedent, Dr. Austin H. Huycke, was not an employee of Dr. Lowell S. Devoe, Jr. from February 1, 1955 until July 17, 1956, the date of Dr. Huycke's death. Appellant, citing Walker v. Altmeyer, 2d Cir., 1943, 137 F.2d 531 and United States v. LaLone, 9 Cir., 1945, 152 F.2d 43, contends that the Referee's determination was reasonably reached upon the evidence presented and should not have been disturbed. Since the Referee's finding was predicated upon his judgment of the facts of the case rather than upon an interpretation of the law, the substantial evidence test is indeed applicable. See Irvin v. Hobby, D.C. N.D.Iowa 1955, 131 F.Supp. 851, 863.

■■ The pertinent statutory provision is 42 U.S.C.A. § 410(k) (2), which declares that "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee" is also an employee insofar as federal old age and survivors insurance benefits are concerned. See also Internal Revenue Code of 1954, § 3121(d)(2), 26 U.S.C.A. § 3121(d)(2), (setting out an identical definition of "employee" for purposes of the Federal Insurance Contributions Act). We doubt if much would be gained by here attempting to analyze the confusing treatment given to the employer-employee relationship under the social security laws by both Congress and the courts. A penetrating and exhaustive analysis can be found in Broden, General Rules Determining the Employment Relationship Under Social Security Laws: After Twenty Years an Unsolved Problem, 33 Temple L.Q. 307 and 381 (1960). Suffice it to say that we have heretofore applied what we still think is the proper test, a test in which the totality of the situation, in contradistinction to the single factor of control of the alleged employee by the alleged employer, is governing. Westover v. Stockholders Publishing Co., 9 Cir., 1956, 237 F.2d 948, 951. See also United States v. Silk, 1947, 331 U.S. 704, 719, 67 S.Ct. 1463, 91 L.Ed. 1757; Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Higgins, 2 Cir. 1951, 189 F.2d 865, 869. The pertinent administrative regulations can be viewed either as in accord with our position or as placing conclusive emphasis on the factor of control. In any event, these regulations indicate some of the variety of factors which should be examined in determining whether an employment relationship exists for social security purposes. Both 20 C.F.R. § 404–1004(c) (2) (1949 ed., 1960 Supp.), apropos of benefits and 26 C.F.R. § 31.3121(d)–1(c) (2) (1960 Revision), apropos of contributions, provide:

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services. not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an

employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *"

Among additional factors to be considered are the opportunities of the alleged employee for profit or loss and his investment in the work facilities. Westover v. Stockholders Publishing Co., supra, 237 F.2d at page 951. With this broad scope of inquiry in mind, we turn to the facts in the instant case.

By agreement dated January 31, 1955, Dr. Huycke transferred his practice to Dr. Devoe, a younger physician who was and had for some time been the employee of Dr. Huycke. The agreement is not long, and the interpretation placed on it by the Referee weighed heavily in his decision. We set it out in full at this juncture for easy reference:

"Agreement of Transfer of Practice

"Agreement of Transfer of my Practice to Lowell S. Devoe, Jr., M.D., on February 1, 1955, shall be under the following conditions:

"I. You will assume full business management of the office and have free use of all equipment, supplies, etc.

"II. All accounts receivable for professional services rendered prior to February 1, 1955, are to remain as my property. The secretary will continue to send out my statements on these accounts as usual. Likewise you shall collect and receive all payments for and be the owner of all accounts receivable on professional services rendered by either of us after January 31, 1955.

"III. I will continue to work with you and cooperate in the provision of service to our patients, except that I will take more time off when it is convenient.

"IV. This agreement shall terminate on January 1, 1958. On this date in consideration of payments as described in item V, below, I shall transfer all equipment, medical records, office furnishings, etc., which are now in this office to your ownership, and free from any debt, lien, title or mortgage and from any claim on my part.

"V. In consideration of the above stated you will pay me as follows:

"A. To be considered as purchase of my medical practice, to include its good will, rights to office location, and aforementioned furnishings and equipment; $100.00 per month from February 1, 1955, to January 1, 1958.

"B. To be considered as salary for the professional services, as follows: $600.00 per month from February 1, 1955, to January 1, 1956. $500.00 per month from January 1, 1956, to January 1, 1957. $400.00 per month from January 1, 1957, to January 1, 1958.

"VI. If any occasion arises before January 1, 1958, in that I will be unable to work, you will pay me or my estate $300.00 per month until January 1, 1958, on which date, all equipment, x-ray, instruments, etc., I will donate to you entirely and free from any claim on my part or that of my heirs.

"VII. If any misfortune should happen to you before January 1, 1958, whereby you could not continue practice, this arrangement is void, and you or your estate can collect all accounts of work which we have done after February 1, 1955, but all equipment shall be retained by me with the exception of any articles other

than current supplies, which you might have purchased for yourself.

"/s/ A. H. Huycke
"/s/ Lowell S. Devoe, Jr., M.D.
"Witness: /s/ Frances S. Johnson
"Date: January 31, 1955."

From the terms of the agreement the Referee inferred that no price was ever arrived at the sale of Dr. Huycke's practice and equipment, that the parties intended to provide Dr. Huycke with incoming revenue of no less than $300.00 per month regardless of services rendered, that Dr. Devoe had no power to discharge Dr. Huycke, that no standards were set by which Dr. Huycke could be discharged for cause, that the amount of services to be rendered by Dr. Huycke was unknown, and that Dr. Huycke did not subject himself to the control of Dr. Devoe as to the means and methods to be employed for accomplishing a result. The Referee was impressed also by the fact that Dr. Devoe could not obtain ownership of the practice and equipment if for any reason he was unable to continue the practice before the contract period terminated. Other factors which influenced the Referee's decision were that Dr. Devoe did not actually control the means and methods used by Dr. Huycke, that both doctors held themselves out to the public as independent practitioners, that Dr. Huycke was the owner of substantially all the equipment used in the practice, that Dr. Huycke's income tax returns revealed that he had made office expenditures and paid personal property taxes which were "unusual for an employee," and that Dr. Huycke's income did not appreciably lessen when he allegedly gave up being an employer and became an employee.

To begin with, we think that the inferences drawn by the Referee that no price was set for the sale of Dr. Huycke's practice and that the intention of the parties was simply to guarantee Dr. Huycke a minimum income without regard to services rendered are unwarranted and unreasonable. The price term was conditional, but it was clear and specific. Dr. Devoe was to pay Dr. Huycke $100.00 per month during the course of the contract. If Dr. Huycke became physically unable to work, the price was increased to $300.-00 per month beginning upon the date of such inability and was payable to Dr. Huycke's estate in the event that he died before the termination of the contract. In a sense this provision calls for a kind of disability or life insurance, but in any event the salary aspects of the agreement are wholly separable. As long as Dr. Huycke could work, he was to be paid a monthly salary. When Dr. Huycke could no longer work, this salary was apparently to cease. That the price for the practice and equipment would then go up does not in our view afford grounds for the inference that an employment relationship was not contemplated as to the work to be done by Dr. Huycke and the salary to be paid him.

We also think that the agreement does set out standards for the amount of work to be done by Dr. Huycke. He was to continue to do the work that he had been doing prior to the date of the contract, and the evidence showed that he fulfilled the obligation. Surely he could have been discharged and denied his salary if he decided that he would prefer not to do any work at all. The right to discharge does not depend for its validity upon a specific term of the contract. We think it was clearly present in the instant case and an affidavit filed by Dr. Devoe said as much. Again, the Referee's inferences are wholly unwarranted.

We agree with the District Court that the retention of title to the medical equipment in the office of Dr. Huycke is indicative of nothing more than the security retained by Dr. Huycke as a conditional seller. The fact that the transfer was conditioned on Dr. Devoe's continued ability to take up the practice is also irrelevant insofar as Dr. Huycke's status as an employee is concerned. The affidavits of Dr. Devoe state that an employment relationship was contemplated by the parties. Dr. Huycke, as the owner of the medical practice and the equipment in the office in which he was to become an employee, wanted to sell what he

owned to Dr. Devoe, for whom he was to work. He had to sell the practice in order to become an employee. The Referee, however, has used those provisions of the agreement between the two physicians which deal with the transfer of the practice to infer that an employment relationship was not created. We think the evidence supports but one conclusion, and that is that the transfer of Dr. Huycke's practice and his employment by Dr. Devoe were distinct transactions and must be treated that way.

Dr. Huycke's income tax returns for 1955 and 1956 cannot be looked at as evidence of the doctor's own understanding of his status. Both returns were made out by an accountant after Dr. Huycke's death. Nor can any weight be put upon the listing of Dr. Huycke and Dr. Devoe in the telephone directory and on the door to the office as independent practitioners of medicine. It offends reason to require that when physicians are in the status of employer and employee, they must indicate their respective positions to their patients and to the public at large or else cast doubt upon the employment relationship into which they have entered. The inferences here drawn by the Referee cannot stand. The same can be said for the inference drawn from the failure of Dr. Huycke's income to fall when he became an employee.

This brings us to the factor of Dr. Devoe's ability to control the means and methods by which results reached by Dr. Huycke were to be pursued. The Referee noted that Dr. Huycke was permitted to treat patients as he saw fit and to prescribe medicines which Dr. Devoe as a younger physician and the student of a perhaps more modern school might not himself prescribe for his own patients. The methods by which physicians work are directed by the standards of their profession and are peculiarly unsuited to direction and close control by an employer. See James, 1956, 25 T.C. 1296, 1301; Rev.Rul. 57–21, 1957–1 Cum.Bull. at p. 317. Dr. Devoe had the highest confidence in Dr. Huycke, who was his senior by many years. Given his faith in Dr. Huycke and the restricted control which in general might be exerted by an employer over an employed physician, we think the failure of Dr. Devoe to limit the methods of treatment and the medicines used by Dr. Huycke is in no way indicative of the absence of an employment relationship. The evidence showed that in many aspects of office procedure, Dr. Devoe altered the practices formerly followed by Dr. Huycke and in their place substituted his own ideas.

█ Mrs. Huycke testified and Dr. Devoe swore in affidavits that Dr. Huycke was the employee of Dr. Devoe after February 1, 1955, and that Dr. Devoe had full power to direct Dr. Huycke and to run the office in which both men worked. Dr. Huycke was paid for his efforts by a salary and had no opportunity to share in the profits of the practice. His investment in the office was in the process of transfer by conditional sale. Despite the fact that Dr. Huycke retained title to the office equipment, it was clearly furnished to Dr. Huycke as an employee by Dr. Devoe as the conditional buyer. The positive evidence of a bona fide employment relationship was overwhelming. Yet the Referee chose to draw unwarranted inferences and come to the opposite conclusion. His determination is unsupported by substantial evidence. Cf. N. L. R. B. v. Local 10, International Longshoremen's Union, 9 Cir., 283 F.2d 558.

The judgment of the District Court setting aside the opinion of the Referee of the Social Security Administration and referring the matter to appellant to fix benefits allowable to appellee is affirmed.