289 F.2d 394
 William E. CODY, Appellant,
v.
Abraham A. RIBICOFF, Secretary of Health, Education and Welfare,* Appellee.
 No. 16649.
 United States Court of Appeals Eighth Circuit.
 April 25, 1961.
 
 Louis S. Goldberg, Sioux City, Iowa, for appellant.
 Donald H. Green, Atty., Dept. of Justice, Washington, D. C., for appellee, William H. Orrick, Jr., Asst. Atty. Gen., Francis E. Van Alstine, U. S. Atty., Sioux City, Iowa, and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., were with him on the brief.
 Before JOHNSEN, Chief Judge, and SANBORN and MATTHES, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 Dr. William E. Cody filed application for social security benefits on the theory that he had been an employee of Doctors Bettler and Beye from June 1, 1955 until August 1, 1957, thereby qualifying for such benefits under the Social Security Act, as amended, Title 42 U.S. C.A. § 401 et seq. The Bureau of Old-Age and Survivors Insurance of the Social Security Administration ruled adversely to appellant, and a referee of the Appeals Council, after a hearing, found that appellant was not an employee of Doctors Bettler and Beye and that he was not entitled to old-age insurance benefits. Upon request, the Appeals Council reviewed the findings of the referee and affirmed his ultimate decision. The decision of the Appeals Council is the final decision of the Secretary of Health, Education and Welfare for the purpose of judicial review, as authorized by Title 42 U.S.C.A. § 405(g). Crooks v. Folsom, D.C.E.D.N.Y., 156 F.Supp. 631, 635; Pirone v. Flemming, D.C.S.D.N.Y., 183 F. Supp. 739, 740, affirmed Pirone v. Flemming, 2 Cir., 278 F.2d 508.
 
 
 2
 Following exhaustion of administrative processes, Dr. Cody instituted an action under § 405(g), supra, in the United States District Court to obtain a review of the decision of the Secretary. As provided therein, and as part of its answer, the Secretary filed a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of were based. From the judgment granting the Secretary's motion for summary judgment and affirming the decision of the Secretary, the appeal was timely taken.[1]
 
 
 3
 At the outset, we observe that by the provisions of § 405(b) the Secretary is directed to make findings of fact as to rights of any individual applying for payments of benefits under the Act. Section 405(g) provides that "(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *." The courts have consistently recognized that the scope of review in the district court as well as in the court of appeals is limited to determining whether, upon review of the record as a whole, there is substantial evidence to support the findings of the Secretary. Kohrs v. Flemming, 8 Cir., 272 F.2d 731; Gainey v. Flemming, 10 Cir., 279 F.2d 56, at page 58; Ferenz v. Folsom, 3 Cir., 237 F.2d 46, 49, certiorari denied 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551; Henderson v. Flemming, 5 Cir., 283 F.2d 882, 884; Goldman v. Folsom, 3 Cir., 246 F.2d 776, 778; Flemming v. Huycke, 9 Cir., 284 F.2d 546. "And the conclusive effect of findings of fact made by the secretary includes inferences from the evidence if there was substantial basis for them. Folsom v. O'Neal, 10 Cir., 250 F.2d 946; Carqueville v. Flemming, 7 Cir., 263 F.2d 875." Gainey v. Flemming, supra, 279 F.2d at page 58.
 
 
 4
 In a leading and oft cited case dealing with the scope of judicial review of findings by an administrative agency, the Supreme Court, in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, at page 477, 71 S.Ct. 456, at page 459, 95 L.Ed. 456, stated:
 
 
 5
 "This Court read `evidence' to mean `substantial evidence,' Washington, V. & M. Coach Co. v. Labor Board, 301 U.S. 142 [57 S.Ct. 648, 81 L.Ed. 965], and we said that `[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. [National] Labor [Relations] Board, 305 U.S. 197, 229 [59 S.Ct. 206, [217,] 83 L.Ed. 126]. Accordingly, it `must do more than create a suspicion of the existence of the fact to be established * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [National] Labor [Relations] Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, [505,] 83 L.Ed. 660]."
 
 
 6
 and in the same opinion at page 488 of 340 U.S., at page 464 of 71 S.Ct.: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."
 
 
 7
 In making determination of whether Dr. Cody occupied the status of an "employee" for the purposes of the social security laws, our decision is to be governed by § 410(k) (2), Title 42 U.S.C.A. which defines an employee as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *." (Emphasis supplied.) Just what these "usual common law rules" may be has been the subject of some dispute within the courts, both before and after the 1947 decisions of the Supreme Court in United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, and Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947.[2] For an interesting and comprehensive review of this area of the law, see Broden, "General Rules Determining the Employment Relationship Under Social Security Laws: After Twenty Years an Unsolved Problem," 33 Temp.L.Q. 307, 381.[3] Regulation No. 404.1004(C) of Title 20, Code of Federal Regulations, gives further guidance by defining "employee" in this language:
 
 
 8
 "(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it it not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *." (Emphasis supplied.)
 
 
 9
 From our review of the cases, it seems clear that the factor of control, if not determinative, is of considerable importance in applying common law standards, considered in conjunction with, and in addition to, other factors which may be present in each individual case. See Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882, certiorari denied, 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605, and United States v. Kane, 8 Cir., 171 F.2d 54, where various factors were considered.
 
 
 10
 With the foregoing controlling principles in mind, and in order to determine whether the Secretary's findings are supported by substantial evidence, we turn to the pertinent facts, which were established from uncontroverted evidence in the form of documents, statements, letters and the oral testimony of Dr. Cody adduced at the hearing before the referee.[4] In summary, Dr. Cody, born in 1888, was a medical doctor, specializing in surgery, and he had practiced his profession in Sioux City, Iowa, for about forty years. In 1945 he formed a partnership with Dr. Phillip L. Bettler, also a surgeon, and then or sometime later sold a half interest in his equipment to Dr. Bettler. In 1950 Dr. Cyrus L. Beye, also a surgeon, became associated with the partnership.[5] This arrangement continued until June 1, 1955. Prior to that date and because of a heart attack previously suffered, coupled with general failing health and a "worn spirit" following many years of "heavy surgery," Dr. Cody had indicated a desire to be relieved of his duties as an active surgeon and the responsibilities imposed upon him as a member of the partnership. Negotiations resulted in an employment agreement being entered into on June 1, 1955, between "the medical partnership of Drs. Bettler & Beye * * * of the one part, and Dr. Wm. E. Cody * * * of the other part." Since the agreement, in toto, appears in the opinion of the district court, 187 F.Supp. at pages 750, 751 and 752, we shall forego incorporating the same in this opinion. In substance, it recites the reason for appellant's retiring from the partnership, the formation of the new partnership of Doctors Bettler and Beye, the desire of the firm to engage the services of Dr. Cody as "associate physician" and his acceptance of such engagement; the effective period of the agreement, which was from June 1, 1955 to July 31, 1957; a provision requiring Dr. Cody "to devote a reasonable measure of his time to serve the professional practice of the firm. Dr. Cody shall himself determine the extent of his activity;" it contains a provision with regard to fees and Dr. Cody's compensation, the latter being fixed on a percentage basis with the amount decreasing from a maximum of 20% to a minimum of 10% of the net income which was to be computed in the manner provided in the contract. Paragraph 6 provided that Dr. Cody's compensation "shall be subject to the customary payroll deduction for withholding and other taxes," and paragraph 7, that "this contract is not and shall not be deemed to be a partnership agreement * * *." On execution of the employment agreement, Cody sold to Bettler his remaining interest in the equipment, for which he was subsequently paid. In turn, and on June 1, 1955, Bettler sold to Beye a half interest in such equipment. On the same date the old partnership was terminated and the new firm of Bettler & Beye was formed. The latter opened a bank account in a different bank; the lease on the premises occupied by the doctors was transferred to the new firm; the insurance policies on the equipment were transferred; a new federal employer's payroll number was obtained for the firm of Bettler & Beye, which also filed a partnership income tax return on Form 1065, showing the organization date to be June 1, 1955. Other pertinent facts will receive our consideration in the course of this opinion.
 
 
 11
 After careful analysis of the memorandum of the referee which embraced his findings and conclusions, it is our view that the Secretary's ultimate finding that Dr. Cody was not an employee was induced by misconception of the controlling principles of law and by giving undue weight to fragments of the evidence viewed out of context. As to the factor of control, the finding was made that "from the employment agreement * * * and from the subsequent acts of the parties, * * * Drs. Bettler and Beye did not exercise such direction and control over the details and means by which the work was to be accomplished by the claimant that he could be considered their employee" (Emphasis supplied). This rather clearly indicates that the referee did not comprehend that as to the issue of control, it is the right of control and not the exercise of control which is important. Additionally, it appears that the findings were induced by an erroneous concept of the employer-employee relationship as it pertains to individuals occupying a professional status. It could be said that the referee was unable to conceive that a physician of Dr. Cody's standing could be a "servant" of another, that he disregarded positive and uncontradicted evidence to that effect, and that he failed to fully appreciate that under proper circumstances physicians may be brought within the coverage of the Act. To illustrate, at the hearing conducted by the referee, the following appears:
 
 
 12
 "Q. Doctors still have not been covered as long as they are practicing? [This quite obviously called for a legal conclusion]. A. That's right.
 
 
 13
 "Q. Your situation admittedly is peculiar. You had been there almost 40 years and you did not go to a strange firm or laboratory and hire out as a white rat innoculator? A. No."
 
 
 14
 We do not understand that the law requires that a physician must work for a firm such as a clinic, or in such junior activities as innoculating white rats, where obviously control of his activities might be more direct and apparent, in order to occupy the status of an "employee" within the meaning of the social security legislation. Important here is the rule that the element of control is subject to special considerations if the employment of professional persons is involved. See Flemming v. Huycke, supra, 284 F.2d at page 550, and Walker v. Altmeyer, 2 Cir., 137 F.2d 531, 533. In Flemming v. Huycke, supra, a case factually similar to that before us, the referee placed emphasis on the freedom of the claimant (also a doctor) to treat patients as he saw fit. In ruling that this circumstance did not alter the doctor's status as an employee, the court stated at page 550 of 284 F.2d:
 
 
 15
 "The methods by which physicians work are directed by the standards of their profession and are peculiarly unsuited to direction and close control by an employer. See James, 1956, 25 T.C. 1296, 1301; Rev.Rul. 57-21, 1957-1 Cum.Bull. at p. 317."
 
 
 16
 From the record, we find that the evidence of Doctors Bettler and Beye, submitted on an approved form, was opposed to the referee's finding of absence of control. It disclosed that Dr. Cody was engaged as an "associate physician to assist the members of the firm in their duties and under their direction and to advise and consult with the members of the firm on matters as directed" (emphasis supplied); that the "individual [Dr. Cody] was a full time employee working for this one firm only." Evidence establishing the actual practice of the parties under their contract discloses that Dr. Cody was required within his limitations to make morning calls and be present for afternoon office hours, and that he was instructed by a member of the firm as to his duties and manner of performing same.
 
 
 17
 Dr. Cody also testified that he was subject to the direction of his associates; that each evening he was instructed as to which patients he should visit upon hospital rounds the following morning; that they (Bettler and Beye) determined who would attend medical meetings and conventions, and that within the bounds of professional ethics he was answerable to them. Bearing on this issue of control, the following testimony of Dr. Cody is typical:
 
 
 18
 "Q. This is a situation concerning professional people where they are not likely to exercise a master-servant authority over you as a servant, but with this we have to arrive at the legal question of whether or not they had the authority to treat you as a servant? A. They certainly did.
 
 
 19
 "Q. Not whether they did exercise it from time to time but whether they had the authority? A. That is true. On certain things that I thought maybe should be done they wanted to hold it up awhile. That was their privilege. I couldn't say you got to do this or anything like that." (Emphasis supplied).
 
 Again, we find this testimony:
 
 20
 "Q. If you said it required surgery ordinarily one of them would do the surgery? A. Yes, and decide whether is was necessary to do it. You know, once in a while we'd have some question of whether it is the proper thing. Have to observe them or put it off or do it immediately. They were the ones that were holding the sack as far as the result of the thing was concerned. So, obviously, it was their choice and when and what to do." (Emphasis supplied).
 
 
 21
 In addition to the foregoing evidence tending to establish the element of control over Dr. Cody's activities, there are other circumstances which considered in totality effectively rebut the argument that the doctor's status was not changed by the employment agreement. His income dropped materially from the date of the employment agreement. In 1952, his share of the income from the partnership was $22,499.94; in 1955, prior to June 1, it was $6,643.23, and for the remainder of 1955, it was $3,150. His income in 1956 was $5,847.46, and to July 31, 1957, the termination date of the arrangement, it was $3,153.17. It is apparent that his remuneration depended upon continued service to the firm, with the devotion of "a reasonable measure of his time" thereto. He had no interest in the fees earned by him, all inured to the benefit of the firm; furthermore, the evidence indicates that he had discontinued his operation as an independent practitioner, in toto. He had no office of his own — the lease on the premises had been transferred to Doctors Bettler and Beye. He had no office furnishings or medical equipment. It had all been sold to Dr. Bettler. He had no share in the risks and liabilities of the new partnership.
 
 
 22
 The referee and the district court attached considerable importance to the fact that Dr. Cody paid his own automobile expense incurred while carrying on his limited duties, and the expense of attending medical conventions and deducted them as business expenses in computing his federal income tax. It is said that this arrangement was contrary to the provisions of paragraph 5.04 of the employment agreement which in effect was that the firm should bear Dr. Cody's transportation cost and expense, medical society dues, cost of protective insurance and expense of attending professional meetings. We agree with the contention that the unequivocal testimony of Dr. Cody and the statement appearing in the letter of the attorney who drew the contract established that this provision was deleted before the contract was actually executed and that Dr. Cody had agreed to defray his own expense. The fact that he did is not sufficient in our opinion to destroy his status as an employee of the firm.[6]
 
 
 23
 Neither do we regard the reference to Dr. Cody as an "associate physician" or the failure of the contract to use the term "employee"[7] or the fact that Dr. Cody's remuneration was geared to the partnership income as being inconsistent with the employer-employee relationship.
 
 
 24
 There is no claim here that the parties entered into the contract as the result of improper motives or that the agreement was a mere sham or pretense, and even if it could be successfully argued that the arrangement was for the purpose of bringing Dr. Cody within the coverage of the Social Security Act, no legal impropriety would result. The motives inducing the parties are not important. Rhoads v. Folsom, 7 Cir., 252 F.2d 377, 380; Stark v. Flemming, 9 Cir., 283 F.2d 410. It is entirely sufficient if the agreement or contract arrangement is lawful, bona fide and made in good faith.
 
 
 25
 Considering the record and evidence as a whole, we must conclude that Dr. Cody had no rights or status other than that of an employee, and that the referee's determination to the contrary, resting upon speculation and inferences having no evidentiary support, is not supported by substantial evidence.
 
 
 26
 It is ordered that the summary judgment entered by the district court be set aside and the case is remanded for further proceedings in accordance with the views expressed herein.
 
 
 
 Notes:
 
 
 *
 On January 31, 1961, and after appeal, Abraham A. Ribicoff was substituted as appellee in lieu of Arthur S. Flemming, former Secretary
 
 
 [1]
 The opinion of the district court is reported at 187 F.Supp. 749
 
 
 [2]
 See and compare cases cited, United States v. Silk, 331 U.S. at pages 705-706, note 2, 67 S.Ct. at page 1464; Flemming v. Huycke, 9 Cir., 284 F.2d 546; Beatty v. Halpin, 8 Cir., 267 F.2d 561, 564. The Restatement of Agency, Second Edition, § 220 states that in determining the status of servant or independent contractor, there are, among others, ten matters of fact (which are enumerated) to be considered
 
 
 [3]
 Briefly stated, some courts believed common law rules were determinative, but differed as to content of these rules, particularly as to whether the factor of control was conclusive. Other courts, repudiated common law rules, and looked to purpose of the legislation for guidance; others combined common law rules with the purposes of the legislation. See Broden, supra, 33 Temp.L.Q. at p. 316. See also, Ringling Bros.-Barnum & Bailey Combined Shows v. Higgins, 2 Cir., 189 F.2d 865, 867-869
 
 
 [4]
 The hearing held in Miami, Florida, was ex parte in character, in that Dr. Cody was not represented by counsel and his testimony was elicited through interrogation by the referee, who is a lawyer
 
 
 [5]
 While the exact status of Dr. Beye is not clear, we do not regard it as having any material bearing on the ultimate outcome
 
 
 [6]
 The Appeals Council, in reviewing the referee's findings, observed that question of deductibility of expenses for income tax purposes is not determinative of Dr. Cody's status as an employee
 
 
 [7]
 An official Bureau ruling, identified as S.S.T. 363 (1939-19-9825) was received in evidence at the hearing. It provided that under proper circumstances "associate physicians," whose services are "engaged" may be "employees" for purposes of the Social Security Act