J. C. and Edrie M. **ETHERTON**, Plaintiffs,

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 1917.**

United States District Court
E. D. Tennessee,
Northeastern Division.

March 21, 1967.

W. E. Badgett, Knoxville, Tenn., for plaintiffs.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., G. Wilson Horde, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This action by the plaintiffs to recover withholding, social security and F.U.T.A. taxes, penalties and interest assessed against and collected from the plaintiffs by the defendant's Internal Revenue Service, federal Treasury Department, was heard by the Court without a jury on December 9, 1966. The Court's jurisdiction was invoked under 28 U.S.C. § 1346(a) (1).

The plaintiffs, husband and wife, are citizens of Cocke County, Tennessee. They paid the taxes herein disputed, penalties and interest in the following amounts on the following dates,

| | |
|---|---|
| April 19, 1963 | $ 625.95 |
| May 7, 1963 | 7,000.00 |
| May 10, 1963 | 6,093.10 |
| October 5, 1963 | 1,445.50 |
| | |
| Total | $15,164.55, |

and filed timely claims for refund of these taxes, penalties and interest on May 19, 1964. Proper officials of the defendant rejected such claims on August 19, 1965.

The plaintiffs owned several motels, at various periods involved. The only question presented is whether the operators of these motels were employees of the plaintiffs within the contemplation of the pertinent taxing statutes. The plaintiffs contend these operators were independent contractors, rather than such employees.

Mr. Etherton obtained operators by advertising in newspapers under "help wanted", "motel for lease", and "business opportunities" classified sections. After interviewing the prospects and checking their references, he would engage an operator. The maximum rentals for occupancies were posted in each room, although the operators were authorized to, and on several occasions did, lower the occupancy rate below the posted amount. Food prices were listed on the menus where a restaurant was operated in conjunction.

Mr. Etherton claimed that the operators were on duty 24 hours daily, made and followed their own working schedules, took vacations and other time off at will, purchased supplies, and were required by him to send out laundry and to keep all the rooms clean. He claims that he advised the operators, but that he gave them no detailed instructions. The operators hired and paid from their own recompense any extra help desired.

Spasmodic visits to the respective motels were made by Mr. Etherton, and if the operator were asleep or busy while Mr. Etherton was present, on occasions, he would show rooms to prospective customers. When a restaurant operation was involved, Mr. Etherton would participate in taking inventories, and on his visits he would review the invoices of purchases and the gross receipts and divide the profits with the operators concerned. Mr. Etherton occupied rooms at his motels when visiting without paying any amount for such occupancy.

Mr. Etherton testified that he had no right to discharge an operator, but that either he or the operator could terminate the relationship by giving the other a notice of two weeks' duration. Any losses from one operation would be carried forward into the next operation at the same motel.

On his books and records, Mr. Etherton listed the amounts paid these operators under the heading "operating help". He transmitted and paid the Tennessee sales taxes and claimed credit for depreciation of the motel properties on his and his wife's federal income tax returns.

When a woman was injured on the premises of one of the motels, Mr. Etherton settled her claim. He testified that an interim employee, Ozella Reynolds, was operating this motel at that time. However, he paid no social security-type taxes and withheld no taxes from the compensation paid this operator during that interim.

R. L. Hatfield, Sr.,[1] operated the plaintiff's Dixie (formerly Broadway of America) Motel near Knoxville, Tennessee in 1952–1953 or 1953–1954. He testified that he and his wife agreed with Mr. Etherton to operate this motel and restaurant in return for compensation in an amount equal to one-third of the net profits. Mr. Etherton advised Mr. Hatfield to obtain a license to sell beer. The latter did appear before the Knox County Beer Board, paying the attorney who represented him in the hearing, and obtained a permit in Mrs. Hatfield's name for a license to sell beer.

The Hatfields stayed on the motel premises all the time. Mr. Hatfield ordered and paid for all food for the restaurant, charging the retail prices therefor listed in the menus already provided therein. While he made no changes in the restaurant menu prices, he lowered the price charged for room occupancies below the posted rate on occasions. One of these reduced rentals was on a weekly occupancy basis. Mr. Etherton advised Mr. Hatfield that the weekly rate the latter established was too low but added, " * * * it's up to you." Mr. Hatfield engaged and paid personally a helper once a week. Mr. Etherton kept all the invoices and other records produced in the operation.

Mr. Hatfield said it was his understanding of his arrangement with Mr. Etherton that he (Hatfield) could not hire anyone else to operate the motel and restaurant without the permission of Mr. Etherton, and that Mr. Etherton had the right to fire him. He said in his testimony, "We made this agreement when we first sat down and talked. * * * [Mr. Etherton] * * * said * * *, 'if I find you are not taking care of my business,' or 'if you find I am at fault', whichever it might be, 'you give me two weeks, and I'll give you two weeks' [notice]. That is exactly the arrangement it was. When the well on the premises needed repair, Mr. Etherton paid the charges."

Mr. Joe W. Taylor operated the Broadway of America installation for about eight months in 1953–1954 and the unit at Helenwood for about 10 months in 1954. He was recompensed in amounts equal to one-third of the net profits. He lowered the rate on the rooms for occupancy at the Broadway of America Motel if Mr. Etherton was not present at the time. Mr. Etherton questioned the wisdom of the rate on one occasion, telling Mr. Taylor to be careful in doing this in the future. For the income tax year 1953, Mr. Taylor paid self-employment social security taxes himself. It was Mr. Taylor's understanding of his arrangement with Mr. Etherton that the latter had the right to discharge him at any time, " * * * being his motel. * * * * "

Mr. Henry Lee Wilkerson and his wife operated the same unit for the plaintiffs for a perod of seven and one-half months in 1955. He recalled reducing the rate for room occupancy one time while there without objection from Mr. Etherton. He paid extra help out of his share of the earnings. However, it was his understanding that he was an employee of Mr. Etherton and noted that Mr. Etherton did not pay for his room on his scheduled weekly overnight visits. There was difficulty between this operator and Mr. Etherton, the latter claiming that Mr. Wilkerson was not properly caring for the property.

---

1. Mr. Hatfield's family was of the Hatfields & McCoys fame.

Mr. Wilkerson claimed that Mr. Etherton did the "checking up" himself and then " * * * paid me what he claimed was my part. * * * " There was also complaint by Mr. Wilkerson that Mr. Etherton claimed shortages which were deducted from the share of Mr. Wilkerson, and that he was not authorized, as an employee of Mr. Etherton, to make any disposition of the cash proceeds until Mr. Etherton was present. Mr. Wilkerson eventually withdrew from the association because of the claims of shortage. He testified that he did not ever understand that he was leasing this motel from the Ethertons, but that, on the contrary, he was the Ethertons' employee.

■ The total situation, including the risk undertaken by the aforenamed associates of the plaintiffs, leads the Court to the conclusion that these associates of the plaintiffs Etherton were not independent contractors, but rather were employees for the purposes of withholding, social security, and F.U.T.A. tax purposes. United States v. Silk (1947), 331 U.S. 704, 716, 67 S.Ct. 1463, 91 L.Ed. 1757; Ringling Bros.-Barnum & Bailey Com. Shows v. Higgins, C.A.2nd Cir. (1951), 189 F.2d 865; Ben v. United States, C.A.2nd (1957), 241 F.2d 127; Flemming v. Huycke, C.A.9th Cir., (1960), 284 F.2d 546, 547; Enochs v. Williams Packing & Nav. Co. (1962), 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292.

■■ The taxpayers bore the burden of proving that these employees were independent contractors, and they have not carried this burden of proof. " * * An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the results of his work. * * * Mr. Thompson, in his work upon Negligence, says that 'in every case the decisive question is, had the [employer] the right to control, in the given particular, the conduct of the person [contended to be an independent contractor].' Thompson on Negligence, 909. * * * " Powell v. Virginia Construction Company (1890), 88 Tenn. 692, 697 [1], 13 S.W. 691, 692, cited in Stratton v. United States, D.C.Tenn. (1962), 213 F.Supp. 556, 557; Casement v. Brown (1893), 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582, 585.

■■ The work done by the operators of the Ethertons' motels, and restaurants in some instances, followed the usual path employees doing such work would normally follow. Putting an "independent contractor" label on them does not take the operators out of the ambit of the federal taxing statutes. Cf. Rutherford Food Corp. v. McComb (1947), 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772, 1778 (headnote 3). " * * * Contracts, however 'skillfully devised,' * * * should not be permitted to shift tax liability as definitely fixed by the statutes. * * * " United States v. Silk, supra, 91 L.Ed. at 1769 (headnote 4).

■ The plaintiffs are not liable for the amount of withholding tax on these employees, if, in fact, the employees paid their income taxes due, the plaintiffs being accountable to pay only the interest and any additions to the tax otherwise applicable in respect of the plaintiffs' failure to deduct and withhold. 26 U.S.C. § 3402(d). The defendant's Internal Revenue Service on July 22, 1963, abated taxes and interest assessed against the plaintiffs on account of certain of their employees for the tax years 1948–1960, inclusive, in the aggregate sum of $3,911.63. The plaintiffs have not shown that any other amount or amounts attributable to the withholding tax assessments were improper, and, *acting at the urging of the Court, the defendant is unable to furnish any further information on this issue.*[2]

The plaintiffs are denied all relief, and judgment will be entered by the clerk for the defendant.

---

2. See letter of March 9, 1967 to the trial judge from the Assistant Attorney General of the United States, Tax Division.