Jasper E. MINTON, Plaintiff-Appellant,

v.

Anthony J. CELEBREZZE, as Secretary of Health, Education, and Welfare, Defendant-Appellee.

Mary MINTON, by Jasper E. Minton, Special Administrator of the Estate of Mary Minton, Plaintiff-Appellant,

v

Anthony J. CELEBREZZE, as Secretary of Health, Education, and Welfare, Defendant-Appellee.

Nos. 14038, 14039.

United States Court of Appeals Seventh Circuit.

June 13, 1963.

Robert P. Schwinn, Minneapolis, Minn., for appellant.

Morton Hollander, Chief, Appellate Section, Sherman L. Cohn, Attorney, U. S. Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Nathan S. Heffernan, U. S. Atty., Lawrence R. Schneider, Attorney, Department of Justice, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiffs-appellants, Jasper E. Minton and the estate of his deceased wife, Mary Minton, brought separate actions in the District Court pursuant to Section 205 (g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review the decisions of the Secretary of Health, Education and Welfare that the old-age insurance benefits payable to Jasper E. Minton and the wife's insurance benefits payable to his spouse were subject to overpayment deductions under the Act because of wages received by Minton in excess of the statutory maximum. The Secretary's motion for summary judgment in each action was granted and these consolidated appeals by plaintiffs followed.

Minton reached retirement age (65) on September 30, 1950, and his wife had attained that age on September 27, 1950. On January 12, 1953, each filed an application for benefits based on Jasper E.

Minton's wage record. Benefits were awarded to each effective as of January 1953. Subsequently, the Bureau of Old-Age Survivors Insurance determined that Jasper E. Minton had received remuneration from Minton Motor Sales, Inc., during the months of January 1953 through July 1957, in excess of the amount which would permit payment of benefits for that period. Plaintiffs were notified that an adjustment would be made for such overpayments, in the amount of $7,723 by withholding all benefits payable to them for the period September 1957 through January 1962. Plaintiffs filed a joint request for a hearing. The hearing examiner approved the Bureau's determination and plaintiffs' requests for review by the Appeals Council of the Social Security Administration were denied and the decisions of the examiner became the final decisions of the Secretary.

■ The factual findings of the Secretary, if supported by substantial evidence, are conclusive and this finality attaches not only to the findings themselves but also to the inferences and conclusions drawn from the evidence if there is a substantial basis for them. Brunenkant v. Celebrezze, 7 Cir., 310 F. 2d 355, 356; Sherrick v. Ribicoff, 7 Cir., 300 F.2d 494, 495; Carqueville v. Fleming, 7 Cir., 263 F.2d 875; Rosewall v. Folsom, 7 Cir., 239 F.2d 724.

■ From our review of the record we are of the opinion that substantial evidence and reasonable inferences to be drawn therefrom support the Secretary's finding that Minton's wife was not in a bona fide employer-employee relationship with Minton Motor Sales, Inc., and that the "wages" she received are to be imputed to her husband. And we are of the opinion that the conclusions reached by the Secretary, including his conclusion that plaintiffs were not without fault in their receipt of the overpayments, are based upon the application of correct

legal criteria. This being so we find it unnecessary to consider or discuss the additional grounds [1] upon which the Secretary also relies to support his decisions and the District Court's action in granting the summary judgments it did.

On the issue we have elected to treat as dispositive of these appeals the record discloses that for many years prior to 1950, Minton operated, as a sole proprietorship, a combination farm machinery, automobile dealership, and appliance business. Prior to 1951, Minton's earnings averaged $4,000 per year. In 1951, Minton incorporated his business as Minton Motor Sales, Inc. He and his wife were each issued 416 shares of stock in the corporation in return for assets transferred to it. The remaining 16 shares were issued as qualifying shares to three employees and the attorney for the corporation. It was a family corporation. Minton, his brother, and his son-in-law in addition to the attorney and the bookkeeper, were named directors. Minton became president and general manager and his salary was fixed on July 2, 1951, at $300 per month plus a bonus of 33⅓ per cent of the annual net profits before taxes. His earning for the fiscal year 1951, was $5,337.34, which included a bonus of $1,737.34. In 1952, he received the same salary and bonus. During those years his wife was not an employee of the corporation.

On January 5, 1953, Minton's salary was decreased by a corporate resolution to $75 per month, the maximum amount which he could then earn and still receive old-age insurance benefits. The same resolution authorized the payment of $75 per month to Minton's wife, Mary Minton, as comptroller of the corporation. One week later, on January 12, 1953, each filed application for benefits. Minton's application stated that beginning with January 1953 he would not have earnings in excess of the amount permitted under

---

1. However, we do note in passing that we are of the view that there is substantial evidence to support the Secretary's additional finding that the payment of Minton's personal expenses by the corporation constituted earnings received by him for services.

the Act. Accordingly, he and his wife were awarded benefits.

The salaries of the plaintiffs remained at $75 per month during 1954. During the years 1955, 1956, and 1957, each received $1,200 annually from the corporation, the maximum amount then permitted under the Act. Minton reached the age of 72 on September 30, 1957, after which date there was no longer any excess limit on his earnings (42 U.S. C.A. § 403(b) (2)).

Minton testified that he devoted full time to the business prior to its incorporation and that after its incorporation there was no change in his activities or in the amount of time and effort he devoted thereto. He did state that commencing in 1953 his son-in-law was trained "to take over and to carry on the large obligations" and he didn't "do as much". The bookkeeper, who had been so employed since 1942, testified that Minton was equally active in the business after its incorporation; that Minton was there all the time, the same as he always was, although he didn't do as much of the management.

Minton testified that during the 1953–1957 period his wife "helped take care of the accounts and things of that kind" and told the bookkeeper "how to look after some of that stuff" but he was unable to state the amount of time she so devoted to the business. The bookkeeper testified that Mrs. Minton did not help her with the books; that Mrs. Minton rendered no services in the office; that perhaps she "would be there for no particular reason".

An accountant who performed services for the corporation testified that two or three times a year he met with the Mintons in connection with business problems. But the presence of Mrs. Minton on those infrequent occasions is of little probative value in establishing that a bona fide employment relationship existed. Her presence may well be attributed to her interest in the business as a major stockholder.

Upon creation of the corporation Mrs. Minton, although a major stockholder, was not elected a corporate director or officer, nor was she employed by the corporation until seven days prior to the time Minton applied for old-age insurance benefits, when she was named comptroller[2] at a salary of $75 per month. The amount was increased to $100 in 1956 when her husband's salary was increased to the same amount.

There is no substantial evidence in the record to show that Mrs. Minton rendered services to the corporation in an employment relationship, and the circumstances surrounding the payments made to her by the corporation warrant the inference drawn by the Secretary that the "employment" was no more than a fiction designedly utilized to channel additional earnings to Minton in excess of the maximum permitted during the period involved.

Plaintiffs' reliance upon Rhoads v. Folsom, 7 Cir., 252 F.2d 377, is misplaced. In Rhoads the finding of this Court that the wife's salary could not be imputed to the husband was based primarily upon evidence in the record establishing that she actually rendered valuable services in the employment there involved. The finding to the contrary in the instant case is substantially supported by the record. And, whatever conflicts the testimony may have here presented were for resolution by the trier of the facts. The circumstances here are analogous to those in Poss v. Ribicoff, 2 Cir., 289 F.2d 10, and the reasoning of that decision is applicable.

Plaintiffs, likewise, have failed to satisfy the burden of showing that the benefits paid were received "without fault" so as to bring them within the purview of 42 U.S.C.A. § 404(b). Cf. Price v. Folsom, D.C.N.J., 168 F.Supp.

2. Minton stated to the Bureau that his wife was Assistant Secretary and Co-manager of the corporation.

392, 400; aff'd 280 F.2d 956. And see: 20 C.F.R. 404.507–404.511.

The judgment orders of the District Court are affirmed.

Affirmed.