**Effie J. SABBAGHA, Appellee,**

v.

**Anthony CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Appellant.**

No. 9709.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 5, 1965.

Decided April 23, 1965.

Walter H. Fleischer, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen. and Morton Hollander, Atty., Dept. of Justice, and Terrell L. Glenn, U. S. Atty., on brief), for appellant.

Jack F. McGuinn, Columbia, S. C., for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Circuit Judge, and CHRISTIE, District Judge.

BOREMAN, Circuit Judge.

Claimant, Mrs. Effie J. Sabbagha, filed an application on January 22, 1962, with the appropriate division of the Social Security Administration for old-age insurance benefits under the Social Security Act (herein called Act). Her claim for benefits was based almost exclusively on "wages" paid to her by her son Philip during the preceding year for services she had allegedly performed in connection with the operation of his real estate rental business. The Administration disallowed the claim because it determined that claimant was not insured under sec-

tion 214 of the Act,[1] 42 U.S.C.A. § 414. The claimant requested and was granted a hearing before a hearing examiner of the Bureau of Hearings and Appeals. After the hearing at which she and Philip testified, the examiner found that the claimant was not insured because a bona fide employer-employee relationship did not exist between claimant and her son and, consequently, the "wages" paid to her could not be considered in determining the total number of quarters she had been employed. The Appeals Council refused to review the examiner's decision and it became the final decision of the Secretary of Health, Education and Welfare. Pursuant to section 205(g), 42 U.S.C.A. § 405(g), claimant instituted this action to obtain review. The District Court on cross-motions for summary judgment found in favor of the claimant and reversed the Secretary's decision on the ground that it was not supported by substantial evidence in the record but was contrary to and in conflict with it. Sabbagha v. Celebrezze, 231 F.Supp. 440 (E.D.S.C.1964). The Secretary appeals from that judgment and we think the District Court erred in overturning the Secretary's determination.

In reviewing the decision of the Secretary, the District Court and this court are limited by section 205(g) of the Act, 42 U.S.C.A. § 405(g), which provides inter alia: " * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." This statutory rule of finality "extends not only to the basic evidentiary facts but also to the inferences of which such facts are reasonably susceptible." Maloney v. Celebrezze, 337 F.2d 231, 233 (3 Cir. 1964); see also Domanski v. Celebrezze, 323 F.2d 882 (6 Cir. 1963); Minton v. Celebrezze, 318 F.2d 429 (7 Cir. 1963); Cody v. Ribicoff, 289 F.2d 394, 88 A.L.R.2d 970 (8 Cir.

---

1. Section 214 provided that a person to be insured must have at least six quarters of coverage. Section 213(a) defines a quarter of coverage as a period of three calendar months ending on March 31, June 30, September 30, or December

31 in which the individual has been paid $50 or more in wages for employment covered by the Act. Excluding the quarters claimant worked for her son, she had only one quarter of coverage.

1961). Whether or not a bona fide employer-employee relationship existed between claimant and her son was a question to be determined from all the evidence in the record. From the facts and circumstances found to exist, the examiner and the Secretary reached the ultimate determination that the relationship between Philip and the claimant was not that of employer-employee, but a—

"cooperative arrangement in which the son provides a home and spending money for the mother and the mother in return performs necessary household duties within her physical limitations, answers the telephone for the son, receives rent payments, and makes appointments for her son in his absence."

The court's sole function was to determine, upon consideration of the whole record, whether the underlying facts and circumstances as found by the Secretary and the inferences and conclusions drawn therefrom were supported by substantial evidence. See Stevenson v. Flemming, 200 F.Supp. 705, 706 (S.D.N.Y.1960); aff'd per curiam sub nom., Stevenson v. Ribicoff, 297 F.2d 811 (2 Cir. 1961), where it was held that, in Social Security cases, the determination of whether a genuine employment relationship existed is a factual one.

Before 1961 services performed by a parent for a child did not constitute employment covered by the Act. In 1960 Congress amended the Act by Public Law 86–778, § 104(a), effective January 1, 1961, to include employment of a parent by a child. However, the amendment did not extend automatic coverage in all situations. Rather, a bona fide employment relationship had to exist between the parent and the child. Employment was defined, so far as pertinent here, by section 210(a) of the Act, 42 U.S.C.A. § 410(a), as:

"* * * any service, of whatever nature, performed after 1950 * * by an *employee* for the person employing him * * * except that * * * such term shall not include —" (Emphasis added.)

* * *

"(3) (B) Service not in the course of the employer's trade or business, or domestic service in a private home of the employer, performed by an individual in the employ of his son or daughter;"

The term "employee" as used in the case at bar is defined in section 210(j), 42 U.S.C.A. § 410(j), as:

"(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee;"

In determining whether the claimant was an employee within the meaning of the Act, the examiner was free to consider the entire picture presented by all attendant circumstances and by the history of the household and economic relationships between claimant and her son. The fact that the arrangement might have been entered into for the very purpose of bringing claimant within the coverage of the Act would not, in itself, condemn or disqualify the arrangement if there existed a bona fide employer-employee relationship. Cody v. Ribicoff, 289 F.2d 394 (8 Cir. 1961); Flemming v. Lindgren, 275 F.2d 596 (9 Cir. 1960), concurring opinion of Judge Pope; Rhoads v. Folsom, 252 F.2d 377 (7 Cir. 1958); Holland v. Celebrezze, 223 F. Supp. 347 (E.D.Tenn.1963); Chipman v. Ribicoff, 196 F.Supp. 94 (S.D.Fla. 1961); Rafal v. Flemming, 171 F.Supp. 490 (E.D.Va.1959).

There is no requirement that the examiner or Secretary shall give weight to assertions by the claimant in conclusory form when those assertions are not supported by underlying facts. For example, at numerous places in the record Mr. Sabbagha and claimant said that she was "employed" or was his "assistant" or is a "wage earner." This is not only not conclusive evidence on the question of whether an employment relationship exists, it is no evidence at all. Furthermore, with regard to the subsidiary facts on which the claim is based,

"[u]ncontradicted testimony need not be accepted by a trier of facts as true, where there is something in the evidence or in the tale, itself, which furnishes a basis for discrediting it because of its inherent improbabilities." Thurston v. Hobby, 133 F.Supp. 205, 210 (W.D.Mo.1955). This is particularly true where the claimant's testimony specifically negates some of the claims made by the son as to work performed (for example, that she deposited money in the bank) and in general casts serious doubt upon the contention that she was actually serving as an employee in her daily activities.

The facts are set forth in the opinion of the lower court and need not be repeated in detail; we merely summarize them to show the basis for our conclusion. Prior to 1961 Philip ran his rental agency from a downtown office building owned by him with no clerical or management employees either on a full-time or part-time basis. Except for major maintenance and repair work performed by independent contractors, he handled all aspects of the business himself and this was at a time when he owned fifty rental units as compared to thirty-seven or eight when he "employed" claimant. Since 1955 claimant had been living with him in his home; he supported her and claimed her as a dependent for income tax purposes.[2] In return she prepared their meals, did the housework (except heavy cleaning), received telephone calls at their residence in connection with the business and delivered messages.

After the Act was amended, Philip moved his office into one room of the home occupied by him and claimant, began paying claimant $35 a week for her services in connection with the business, and carried her as an employee on his business records for both social security and income tax purposes. At that time claimant was sixty-seven years old, had no prior work experience except for three months in 1946 as a cashier in a cafe, and could neither read nor write English. Claimant's duties as an "employee" consisted of answering the telephone, receiving rent money, making appointments and taking notice of other minor details of her son's business, all of which were performed inside the home.

After claimant had worked long enough to qualify for benefits under the Act based on earnings of $35 a week, her salary was decreased to $25 a week. It was explained that this reduction was due to the fact that she became ill yet the evidence did not show that she had been relieved of any of her duties. Moreover, there was no independent evidence, such as canceled checks of the son or executed receipts of claimant, to show that the salary was ever actually paid. Claimant and her son testified that the payments were made in cash and that claimant used the money for her own support.

■ Certainly, from these facts and the inferences to be drawn from them, the examiner could reasonably find that no genuine employer-employee relationship existed. It would be reasonable to conclude, since the son supported claimant from 1955 and took her as a dependent, that the purported wages were nothing more than his continued contributions

2. Mr. Sabbagha suggested at the hearing that his mother actually had been "employed" before 1961, and that he had carried her on his tax returns as a dependent rather than as an employee because he had been advised that "it was against the law for a mother to be the employee of a son." This explanation was obviously offered to avoid the plausible inference that the "employment" arrangement was merely a contrivance to garner benefits after the Social Security Act was amended. Of course, prior to the amendments, an employer would not report as "wages" remuneration paid a parent for services performed for purposes of the Federal Insurance Contributions Act. But it is equally clear that if his mother was, in fact, being paid for services rendered, even if only $600 a year, she could not be taken as a dependent (26 U.S.C. §§ 151(e), 152) and that the cost of her salary could be deducted as an ordinary business expense. There is strong support for the inference that the son did not consider his mother as an employee prior to the 1960 amendments to the Act by which it became advantageous to "set her up as an employee."

to her support, the only change being in the designation of the payments as "wages." From fact situations similar to those in the case at bar, this court and other courts have reached a like determination. Palmer v. Celebrezze, 334 F.2d 306 (3 Cir. 1964); Domanski v. Celebrezze, 323 F.2d 882 (6 Cir. 1963); Sherrick v. Ribicoff, 300 F.2d 494 (7 Cir. 1962); Barron v. Ribicoff, 295 F.2d 432 (4 Cir. 1961); Folsom v. O'Neal, 250 F.2d 946 (10 Cir. 1957).

Here, it is claimed that an elderly woman, with virtually no work experience, who could neither read nor write English and who has been sick during at least, part of the alleged period of employment, is an employee of her son in the home they share. Scrutinizing these unrealistic claims based upon intrafamily transactions in the light of common experience, the record as a whole leaves no room to doubt the correctness of the Secretary's determination to the effect that the employment claimed was not bona fide but was merely colorable.

Reversed.