Essie B. GASTON, Plaintiff,

v.

Honorable John W. GARDNER, Secretary, Department of Health, Education, and Welfare of the United States of America, Defendant.

Civ. A. No. 4658.

United States District Court
D. South Carolina,
Rock Hill Division.

Nov. 30, 1965.

David Lyle, Rock Hill, S. C., for plaintiff.

John C. Williams, U. S. Atty., and Geddes Hugh Martin, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Action appealing a "final decision" by the Secretary of Health, Education, and Welfare in which plaintiff's claim for mother's and child's insurance benefits under Section 202 of the Social Security Act, 42 U.S.C. § 402, was denied. Jurisdiction is proper in this forum in conformity with Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

■■■■ The crucial question here is whether the Secretary's decision is supported by substantial evidence. Of course, substantial evidence is not tenuous evidence, but is evidence of such relevance that a reasonable mind might accept as sufficient to support a conclusion. Substantial evidence is more than a scintilla, and must go beyond creating a mere suspicion of facts purportedly established. As the late Mr. Justice Frank-further noted in Universal Camera Corp. v. N.L.R.B. 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456;

> Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety [furnished], including the body of evidence opposed to the Board's view.

This Court realizes that a trier of fact can make a finding contrary to uncontradicted testimony when the testimony is inherently "suspect" or improbable, Sabbagha v. Celebrezze, 345 F.2d 509, 511, 512 (4th Cir. 1965), but undue reliance cannot be placed upon one portion of the record in the face of overwhelming evidence to the contrary. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). In a nutshell, the decision must be rational. Id.

The record reveals that plaintiff filed her application for mother's and child's benefits on May 10, 1963, basing her claim upon the earnings of her deceased husband, Frank Gaston. The cognate question here is: was the child, Michael Gaston, living in Frank Gaston's household at the time of the latter's death within the contemplation of the Social Security Act?

Section 202(g) of the Act, 42 U.S.C. § 402(g), relating to mother's insurance benefits provides in pertinent part:

> (g) (1) [t]he widow * * * of an individual who died a fully or currently insured individual, if such widow * * *
>
> *   *   *   *   *   *
>
> (E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit,
>
> *   *   *   *   *   *
>
> shall be entitled to a mother's insurance benefit * * *.

Section 202(d) of the Act, 42 U.S.C. § 402(d), relating to child's insurance benefits, incorporates the following definition of "child" found in section 216(e) of the Act, 42 U.S.C. § 416(e):

> (e) The term "child" means (1) the child or legally adopted child of an individual, and (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) the day on which such individual died. For purposes of clause (1), a person shall be deemed, as of the date of death of an individual, to be the legally adopted child of such individual if such person was at the time of such individual's death living in such individual's household and was legally adopted by such individual's surviving spouse after such individual's death but before the end of two years after the day on which such individual died or August 28, 1958; except that this sentence shall not apply if at the time of such individual's death such person was receiving regular contributions toward his support from someone other than such individual or his spouse, or from any public or

private welfare organization which furnishes services or assistance for children. * * *

It is undisputed that Frank Gaston, the wage earner, died on May 8, 1961 and that Michael Gaston was not adopted by his widow, plaintiff here, until May 8, 1963. Michael Gaston may be considered the "child" of Frank Gaston only if he was *living in his household* at the time of the latter's death. 42 U.S.C. § 416(e).

Plaintiff and Frank Gaston were married on February 29, 1936 and were living together in 1954 when Michael Gaston, at the age of seven months, was placed in their custody. At some time during the next year or two plaintiff and Frank Gaston "separated" due to marital difficulty. The child thereafter lived with the wage earner for approximately six months while plaintiff secured lodgings, and subsequently lived with her.

Between 1955 (or 1956) and 1960 Frank Gaston lived with another woman and maintained her home. During this time it appears that plaintiff (who was very self-righteous about her husband's activities outside the home) also participated in similar ventures.[1] In January 1960, Frank Gaston was arrested on suspicion of committing a homicide in which his paramour was intimately involved. Later that year he was convicted of manslaughter and sentenced to nine years in prison. He died in prison a year later.

There is conflict in the testimony as to exactly how much support Frank Gaston provided for plaintiff and the child during the time preceding his imprisonment. It is true that most of his time was spent with the friend with whom he lived "without benefit of clergy," but there is considerable testimony that he provided for his wife and stepchild, and that she alone made up the deficiency which he failed to provide. The record reveals that she received no "welfare" or other outside pecuniary benefits during the time in question. Often during this time he slept at home with his wife.

■ Naturally, Frank Gaston had no "household" in prison; so for these purposes, his "household" would be that which existed just prior to his incarceration. Nevertheless, statements made by the wage earner in prison indicated that when he was released he was going to return to his wife, and their home.

■ The Secretary emphasizes that the child must be "living with" the wage earner in order to come within the purview of the Act. Though "living with" is inextricably tied up with the term "household," the essential, and unavoidable implication, is that "household" is synonymous with "home." And the fact that the wage earner was frequently delict in his duties attendant with the proper maintenance of a "home" or "household" is not fatal to entitlement. This Court will not strain ordinary meaning to require that all the "proper" prerequisites to maintaining a home are the *sine qua non* to entitlement under the Act. The fact is that plaintiff's and the child's household was the same as the deceased wage earner. Variations from the community's moral standards, though important, are not controlling in this single determination.

Viewing the record as a whole, and considering the congressional purpose, the only reasonable conclusion is that plaintiff's motion for Summary Judgment must be granted because the Secretary's decision is not supported by substantial evidence. Inclusion under the Act's umbrella of beneficent purpose is intended, and this Court will rule accordingly.

The Clerk will enter Judgment for plaintiff.

And it is so ordered.

---

1. See Lee's Heirs v. Lee's Ext'r, 4 McCord 183 (S.C.1827), where a testator's belief that "all women were witches" was held not proof of a disordered mind.