James **EASTMAN**, Plaintiff-Appellee,

v.

**John W. GARDNER**, Secretary of Health, Education and Welfare, Defendant-Appellant.

**No. 16791.**

United States Court of Appeals
Sixth Circuit.

Feb. 13, 1967.

J. F. Bishop, Atty., Dept. of Justice, Washington, D. C., for appellant, John W. Douglas, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief.

N. C. Syracopoulos, Akron, Ohio, for appellee.

Before PHILLIPS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

---

HARRY PHILLIPS, Circuit Judge.

Plaintiff-appellee, referred to herein as claimant, filed a claim for old age insurance benefits under the Social Security Act. The Secretary denied benefits on the ground that claimant was not a fully insured individual under the provisions of the Act.

Claimant filed this action to obtain a judicial review under 42 U.S.C. § 405(g). The district court granted summary judgment in favor of claimant, set aside the decision of the Secretary, and directed the Secretary to pay the claim. The Secretary has appealed.

The Secretary denied the claim on the ground that a genuine employer-employee relationship did not exist between claimant and his two stepsons, who were his alleged employers.

Reference is made to the opinion of the district court for a detailed recitation of facts. Eastman v. Celebrezze, 240 F.Supp. 142 (N.D. Ohio). Claimant, an Italian immigrant, was born on August 11, 1894. In 1927 he changed his name from Vincenzo Giancarli to James Eastman. In September 1946 he married his brother's widow and thus became the stepfather of his brother's two sons, Donald and George. Donald also assumed the surname of Eastman but George retained the surname of Giancarli.

For about twenty-six years claimant engaged in business as a self-employed portrait photographer and operated a photo studio. In 1946 he discontinued his business because of poor health and sold the studio to his stepsons for $500 in cash. The stepsons thereafter operated the studio as a partnership. During the ensuing ten years claimant lived off the rentals from real estate owned by him, including the four-story building in which the photo studio was located.

The partnership of Donald and George in the photo studio ended in 1952 and Donald became the sole owner of the studio. Thereafter George operated a restaurant and two taverns in one of the other store spaces in the building and a parking lot enterprise in the rear of the same property. All of these businesses of George were operated on real estate owned by claimant except for part of the parking lot.

The stepsons shared in the proceeds from the rental of the building in which the photo studio, restaurant and taverns were located, under an oral arrangement, the details of which are not clear from the record.

After claimant had lived in retirement for approximately ten years, he entered into an arrangement with his stepsons whereby he undertook to become an employee for the purpose of qualifying for maximum old age insurance benefits under the Social Security Act. In 1955 or 1956 Donald employed his stepfather to work in the studio at $4,200 per annum, which at that time was the maximum amount creditable under the Social Security Act. Claimant testified that he started to work as Donald's employee on January 2, 1956, but Donald did not report him as an employee until the last quarter of 1956, asserting payment of $4200 in wages.

Claimant's application for benefits was based upon his alleged employment by Donald as a photo finisher during the years from 1956 through the first half of 1959, and by George as a parking lot attendant during the remainder of 1959 and the first quarter of 1960.

In Donald's reports and records of wages at the studio, claimant was listed as an employee at $4200 per year throughout 1957 and 1958, and $4800 per year for the first half of 1959. During this period Donald's net profits at the studio totaled $3,593.80 in 1953, $2,731.22 in 1954, $2,976.68 in 1955, $2,966.19 in 1956 and $157.81 in 1957. In 1958 the studio experienced a net loss of $1,237.50 and in 1959 a net profit of $420.57.

Commencing with the third quarter of 1959 and through the first quarter of 1960, claimant was reported as an employee of George at $4800 per annum. The income tax returns of George showed net earnings from the parking lot of

only \$2685.94 during 1959 and \$17.29 in 1960. During the latter year he reported a net loss of \$944.67 from all his enterprises.

Claimant's increase in compensation from \$4200 to \$4800 coincided in time with the amendment to the Social Security Act which increased to \$4800 the maximum amount creditable under the Act. As soon as claimant had drawn the maximum compensation for a sufficient number of quarters to claim benefits as a fully-insured individual under the Act, his compensation from George was reduced to \$1200 per year, which was the maximum compensation he could receive at that time without loss of Social Security benefits.

During the time that George was paying his stepfather \$4800 per year for part-time services (approximately \$92 per week) as a parking lot attendant, he was paying a full-time attendant \$63 per week in 1958 and \$77 per week in 1959. Evidence was introduced to the effect that the prevailing wage for parking lot attendants for the years in question was from \$1.00 to \$1.50 per hour and the prevailing wage for photo finishers was between \$50 and \$60 for a forty-hour week.

The evidence further established that during the years when claimant was receiving \$4200 or \$4800 in compensation from his stepsons, adjustments were made upward in the amounts the stepsons received out of the gross rentals from the building, so that the stepsons received substantially enough money from the rentals to pay the stipulated compensation to their stepfather.

The building in which Donald's studio and George's enterprises were located is described in the record as the "Main Street Property." The increases received by Donald and George from the rentals of this property during the years they were paying compensation to their stepfather are demonstrated by the following figures:

| Year | Gross Rentals | Rentals Received by Claimant | Percent of Gross Withheld from Claimant | Rentals *Not* Received by Claimant | Amounts Received by Donald from George | Wages Received by Claimant |
|---|---|---|---|---|---|---|
| 1954 | \$12,870 | \$10,470 | 19% | \$ 2,400 | 0 | 0 |
| 1955 | 11,820 | 9,420 | 20% | 2,400 | 0 | 0 |
| 1956 | 10,515 | 6,600 | 37% | 3,915 | 3,500 or 4,500 | From Donald 4,200 |
| 1957 | 11,820 | 6,600 | 44% | 5,220 | 4,500 | 4,200 |
| 1958 | 14,620 | 9,120 | 38% | 5,500 | 4,500 | 4,200 |
| 1959 | 13,820 | 9,120 | 34% | 4,700 | 4,700 | 2,400 |
| | | | | | 17,200 | 15,000 |
| | | | | | | From George 2,400 |
| | | | | 19,335 | | 17,400 |
| 1960 | 13,200 | 13,200 | 0 | 0 | 0 | 1,200 |
| | | | | | | 18,600 |
| 1961 | 11,200 | 11,200 | 0 | 0 | 0 | 1,200 |
| 1962 | 10,500 | 10,500 | 0 | 0 | 0 | 1,200 |

The decision of the hearing examiner discusses the foregoing figures, the details of the transactions among the parties, and the income tax returns and quarterly Social Security tax returns of the parties for the years in question. The testimony is in conflict as to the exact nature of the arrangement for division

of the rental income among the parties. Claimant testified that he did not lease the building to George, but that George managed the building and paid to claimant at least ten per cent on his investment of $40,000. George testified that he had no specific lease arrangement with the claimant, that he paid rent to himself and that he gave claimant a portion of the rental income "as I see fit, provided it is a fair amount." He denied that there was a specific agreement for a guaranteed minimum rate of ten per cent on claimant's investment of $40,000 and stated that "I could go under that if I wished." He testified, however, that the claimant actually had been receiving more than ten per cent on his investment.

During the time that Donald was paying compensation to his stepfather, George paid over to Donald from George's share of the rentals the sum of $17,200, which was more than the compensation paid by Donald to claimant for these years. Donald described these receipts on his income tax return as "sublet income," but testified that he actually received these amounts for services rendered by him to George in the operations of the various businesses owned by George. Significantly, these payments from George to Donald terminated at the same time that claimant was transferred from Donald's payroll as an employee of the photo studio to George's payroll as a parking lot attendant. During the time that claimant was an employee of George, the latter retained more than enough rental money to pay claimant's wages of $4800 per annum.

As soon as claimant had been employed a sufficient number of quarters to apply for Social Security benefits, George ceased to withhold any of the rental money. Beginning with the year 1960 the gross rentals were paid over to claimant, with no withholding by George for his management services.

Basing his decision upon more than 100 pages of transcribed testimony and 64 documentary exhibits, including tax returns, the hearing examiner concluded that claimant's combined income in rents from his commercial property managed and occupied in part by George and his alleged compensation from his stepsons in the years 1956 through 1959 approximated the income which he received in rents alone after 1959. He further concluded that "all of the payments received by claimant during the years 1956 through 1959, and indeed through March 1960, were actually rental income, some of which was designated as 'wages' so as to qualify the claimant for social security benefits."

The Secretary and Appeals Council approved these findings of the hearing examiner and also his conclusion that the wage record undertaken to be established by claimant was "the product of a collusive arrangement between the claimant and his stepsons," that claimant did not in fact work as an employee of his stepsons, and that he was not a fully insured individual under the Act.

■ The standard of judicial review in cases of this kind was stated by this court in Domanski v. Celebrezze, 323 F. 2d 882, 885, 8 A.L.R.2d 687, cert. denied, 376 U.S. 958, 84 S.Ct. 980, 11 L.Ed.2d 976, as follows:

"We should first point out that in an action to review the decision of the Secretary the case is not tried de novo in the District Court. The review is limited to the record of the proceedings before the Secretary. In reviewing this record the Court is not authorized to adopt findings of fact of his own, but must accept the Secretary's findings of fact if they are supported by substantial evidence. When so supported, they are conclusive. 42 U.S.C. § 405; * * *"

In that case the Secretary found that claimant had no genuine employer-employee relationship with his son-in-law. This court holds that the finding of the Secretary was supported by substantial evidence.

■ The annotation entitled "Social Security Acts: Requisite of Employment as Affected by Family Relationship Be-

tween Alleged Employer and Employee," 8 A.L.R.3d 696, 698, contains the following statement with which this court agrees: "[G]oing through the forms of employment relationship is not alone sufficient to establish such a relationship. The actual payment of wages does not in itself prove an employment relationship."

To like effect see Bullock v. Celebrezze, 360 F.2d 615 (C.A.4); Sabbagha v. Celebrezze, 345 F.2d 509 (C.A.4); Folsom v. O'Neal, 250 F.2d 946 (C.A.10); Stevenson v. Flemming, 200 F.Supp. 705 (S.D.N.Y.), affirmed Stevenson v. Ribicoff 297 F.2d 811 (C.A.2); Chipman v. Ribicoff, 196 F.Supp. 94 (S.D.Fla.); Murry v. Folsom, 147 F.Supp. 298 (D.D. C.).

We hold that there is substantial evidence to support the conclusion of the Secretary that the paper facade of "wages" paid to claimant represented a mere circuitous, indirect return to claimant of portions of rentals from his own property; and that this case presents a collusive family arrangement to permit claimant to obtain Social Security benefits from his own rental income rather than from a genuine payment of wages.

The judgment of the district court is reversed and the action is dismissed.