Nannie B. WYATT, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare (now Elliot L. Richardson), Defendant.

Civ. A. No. 69-C-48-A.

United States District Court, W. D. Virginia, Abingdon Division.

April 5, 1972.

Franklin P. Pulley, III, Roanoke, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

The claimant, Nannie Belle Crabtree Wyatt, filed an application for widow's disability benefits on January 25, 1968. When she filed her application for benefits, she stated that she had been disabled since July 27, 1967 because of a "broken back."

On June 26, 1968, Mrs. Wyatt was advised by the Social Security Administration that her condition was not of sufficient severity so as to meet the disability requirements of the applicable law to entitle her to receive disability benefits. On July 18, 1968, Mrs. Wyatt requested reconsideration of the denial of disability benefits and stated as her reasons for such a request that: "I feel that I am disabled."

On August 6, 1968, as affirmed August 13, 1968, the disability examiner for the state agency determined that the medical evidence did not indicate impairments which approached the severity contemplated in the regulations, and thus denied the disability benefits. The examiner reported that, in Mrs. Wyatt's interview on July 18, 1968, she complained of back pain, pain over her left eye, and her left leg hurt occasionally. The examiner stated that Mrs. Wyatt was cooperative and that no impairment

or difficulty was observed. The examiner determined that x-rays revealed approximately fifteen percent loss in vertical dimension [of the L–2 vertebrae] as a result of a back fracture which Mrs. Wyatt sustained in July, 1967. The examiner further determined that a neurological evaluation in June, 1968 revealed no limitation of motion of the spine and no weakness of any extremities nor muscle spasm. The examiner felt that Mrs. Wyatt was somewhat neurotic, but found that evidence of severe mental disorder was lacking. Disability was denied.

On August 21, 1968, Mrs. Wyatt was informed, on reconsideration by the Secretary, that the state agency determination was correct, and that she was not considered disabled under the law.

On December 12, 1968, Mrs. Wyatt requested a hearing before a hearing examiner of the Bureau of Hearing and Appeals. She stated as her reason for disagreement with the determination that she was not entitled to disability benefits that: "I feel that I am unable to do any type of work."

On February 13, 1969, the hearing was held in Bristol, Virginia. Mrs. Wyatt and her daughter were the only witnesses to testify at the hearing. Their testimony was to the effect that, since the 1967 fall, the claimant has been unable to do any sustained work, including housework, and was in more or less constant pain from her back injury. Plaintiff testified her left arm and leg got numb.

On February 19, 1969, the hearing examiner reported that Mrs. Wyatt was not entitled to widow's disability benefits. On February 27, 1969, Mrs. Wyatt requested that the hearing examiner's determination be reviewed by the Bureau of Hearings and Appeals of the Social Security Administration.

By letter dated March 13, 1969, Mrs. Wyatt was notified that the Appeals Council had concluded that the decision of the hearing examiner was correct, thus adopting the hearing examiner's decision as the final decision of the Secretary of the Department of Health, Education and Welfare.

On April 23, 1969, Mrs. Wyatt filed her complaint under the provisions of § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the adverse decision of the Bureau of Hearings and Appeals of the Social Security Administration. Pursuant to the provisions of 42 U.S.C. § 405(g), the case was remanded on July 28, 1969 to the Secretary upon his own motion. On February 10, 1970, the Appeals Council again determined that Mrs. Wyatt was not entitled to widow's disability benefits and, based upon the evidence of the record, made the following specific findings:

"1. The claimant was born on March 9, 1914 (sic).

"2. The claimant is the widow of John A. Wyatt, the wage earner, who died fully insured on March 27, 1967.

"3. The prescribed period during which the claimant may establish that she is under a disability extends to February 28, 1974.

"4. The medical findings shown by a preponderance of the medical evidence of record establish the existence of mild residuals of a compression fracture of L–2, bronchitis, and possibly a mild emotional problem.

"5. The medical evidence of the record does not reveal the same attendant medical findings with respect to any of the above impairments as are recited in the Listing of Impairments in the Appendix to Subpart P of the Social Security Regulations No. 4 for these impairments.

"6. The record medical evidence establishes that the medical findings with respect to the claimant's impairments are not equivalent in severity and duration to the listed findings of any impairment listed in the Appendix to

Subpart P. Therefore, the claimant's impairments, considered singly and in combination, are not medically the equivalent of the listed impairment.

"7. The medical evidence fails to establish that at any time on or prior to the date of this decision the claimant's impairments were of a level of severity which, under regulations prescribed by the Secretary, is deemed sufficient to preclude an individual from engaging in any gainful activity.

"8. The claimant was not under a 'disability,' as defined in § 223(d) of the Social Security Act, as amended, at any time prior to this decision."

The case was reinstated on the docket because of the Appeals Council's determination that Mrs. Wyatt was not entitled to disability benefits and is here on cross motions for summary judgment.

§ 223(d) (2) (B) of the Act, 42 U.S. C. § 423(d) (2) (B) defines disability, as applied to widows, as follows:

"(B) A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of § 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity."

§ 223(d) (3), 42 U.S.C. § 423(d) (3) provides:

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

§ 223(d) (5), 42 U.S.C. § 423(3), (5) states:

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The regulations which have been prescribed by the Secretary are contained in Chapter III, Title 20, of the Code of Federal Regulations. 20 C.F.R. § 404.-1504 provides:

*Evaluation of disability—widows and widowers*

"A widow . . . shall, for purposes of § 202(e) or (f) of the Act, be determined to be under a disability only if, in the absence of evidence that he or she is engaged in substantial gainful activity—

"(a) His or her impairment or impairments meet the duration requirement in § 404.1501 and are listed in the appendix to this subpart; or

"(b) His or her impairment or impairments are not listed in the appendix to this subpart, but singly or in combination meet the duration requirement in § 404.1501 and are determined by the Secretary to be medically the equivalent of a listed impairment.

"Such an individual shall not be found under a disability, however, where he or she is engaged in substantial gainful activity."

"§ 404.1505 *Determining medical equivalence.*

"(a) An individual's impairment or impairments shall be determined to be medically the equivalent of an impairment listed in the appendix to this Subpart P, only if the medical findings with respect thereto are at least equivalent in severity and duration to the listed findings of the listed impairment.

"(b) Any decision made under § 404.1502, § 404.1504, or § 404.1539 as to whether an individual's impairment or impairments are medically the equivalent of an impairment listed in the appendix to this Subpart P, shall be based on medical evidence demonstrated by medical judgment furnished by one or more diagnostic techniques,

including a medically acceptable clinical and laboratory physician's designated by the Secretary, relative to the question of medical equivalence. . . ."

20 C.F.R., Chapter III, Subpart P contains an Appendix listing impairments under § 404.1506 C.F.R. The categories of musculoskeletal impairments, including arthritis, are described in §§ 1.00 and 1.01–1.02 in the Appendix; §§ 12.00 and 12.01–12.05 describe mental disorders; and § 3.00 describes respiratory impairments and § 3.02 describes bronchitis.

The Act is quite strict in defining the disability which is required to enable a widow to receive widow's disability benefits. The impairments must be of such a level of severity that they *preclude the widow from engaging in any gainful activity.* 42 U.S.C. § 423(d) (2) (B). [Emphasis added]

The record reflects that Mrs. Wyatt, the mother of nine children, was born on March 9, 1913 and completed three months of the seventh grade in school. Her husband, an ex-miner, died on March 27, 1967, after an extended 20-year disablement. While visiting a fish hatchery in July, 1967, with her daughter and grandchildren, she fell and sustained a back injury.

Dr. J. A. Thompson, Jr., a general practitioner, attended Mrs. Wyatt on July 27, 1967, the day following her fall at the fish hatchery. At that time, Mrs. Wyatt was complaining of pain in her back. An x-ray of the lumbosacral spine revealed a compression fracture with 15% deformity of the L–2 vertebrae. She was not hospitalized following the injury, but was told to remain in bed at home for three weeks.

Dr. Thompson examined Mrs. Wyatt again on September 12, 1968. At that time she complained of pain in her back and down both legs. He stated that any sustained movement of her back or lifting caused her to have pain and tingling in her left leg which usually stopped any activity. Mrs. Wyatt's past medical history revealed that she had had some difficulty with coughing and sneezing for the past four or five years and that she had had some pain in her chest when she coughed. She had been told in West Virginia that she had had a heart attack when she fainted some sixteen years previously. Dr. Thompson's examination of Mrs. Wyatt revealed essentially normal findings. There was some increase in AP diameter of the chest over the lateral diameter and her heart revealed A–2 slightly tambouric, with P–2 being small, but no increase in size and no murmurs present. Her lungs revealed a few musical rales on expiration. Dr. Thompson found her extremities somewhat small with poor musculature being evident. His diagnosis was:

(1) Causalgia, resulting from the compression fracture of the lumbar 2 vertebrae, and

(2) Bronchitis, moderately severe, controlled.

On June 7, 1968, Mrs. Wyatt was examined by Dr. William P. Tice, a board certified neurological surgeon. She reported to him that since her back injury she could not do any bending or lifting, and that on attempting any work she would "give out" in her back and legs. She also claimed that she had experienced numbness in her left leg from the knee to the foot and tingling in her left arm. Mrs. Wyatt impressed Dr. Tice as being neurotic and having a low I.Q. He stated that inspection of her back showed no spasm of the paravertebral muscles or abnormal curvature of the spine. Straight leg raising was not limited on either side. Movements of the spine were normal. There was no weakness of the extremities. The reflexes were active and correspondingly equal. The Babinski reactions were negative. Dr. Tice summarized that plaintiff had received a mild compressed fracture of L–2; that it was possible that Mrs. Wyatt may have some residual pain in her back, but he felt that her symptoms were exaggerated due to psychogenic factors and her desire to get Social Security disability benefits; and that no

further diagnostic studies were necessary.

On October 3, 1969, Dr. Gordon Blackford, a psychiatrist, submitted a psychiatric evaluation for Mrs. Wyatt. He reported that her attitude was somewhat hostile and that she apparently resented the appointment. He indicated her thought processes were a little slower than the average, but that real psychomotor retardation was not indicated. He reported that no psychiatric disorder was present and that she appeared to have above-average ego strength and capacity. Dr. Blackford stated that he recommended no treatment at that time.

The Virginia Department of Vocational Rehabilitation, Disability Determination Section referred Mrs. Wyatt to a psychologist for an evaluation in connection with her claim for benefits. Mrs. Wyatt was examined by Ronald E. Harrington, a licensed psychologist, who concluded that Mrs. Wyatt was functioning on the borderline level of mental retardation, having an overall I.Q. of 75 on the Wechsler Adult Intelligence Scale. He felt that she was suffering from a neurotic type depression of a reactive nature precipitated by a great deal of emotional stress. He stated that while there was some involutional overtones, her behavior was not of psychotic proportions.

Under the provisions of 20 C.F.R. § 404.1504, the Secretary is to designate one or more physicians to determine whether the impairment or impairments are medically the equivalent to an impairment listed in the Appendix. The decision of equivalency is to be based upon medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques.

On July 11, 1969, Dr. Ernest A. Brav, a special consultant in orthopaedic surgery to the Bureau of Hearings and Appeals, reported that, based upon the medical evidence demonstrated by medi-cally acceptable clinical and laboratory diagnostic techniques, he considered Mrs. Wyatt to have no impairment which was medically equivalent in severity and duration to any of the impairments listed in the Appendix to Subpart P of the Social Security Regulations (20 C.F.R. § 404).

Dr. Brav commented that it was apparent that Mrs. Wyatt had recovered well from her compression fracture of July, 1967 and that there were no residuals of any severity regarding the lower back or lower extremities. He concluded that from the evidence in the medical record, there was no significant impairment of the lower back or lower extremities.

Dr. Brav noted that Dr. Thompson had diagnosed Mrs. Wyatt as suffering from causalgia.[1] He noted, however, that Dr. Thompson had given no orthopaedic physical findings to support the diagnosis of causalgia, other than Mrs. Wyatt's complaints of pain in the lower back and both legs.

On July 15, 1969, Dr. Wilder P. Montgomery, a special consultant in internal medicine to the Bureau of Hearings and Appeals, determined that it was apparent that Mrs. Wyatt did not have a pulmonary impairment demonstrated by medically acceptable clinical or laboratory techniques that would meet or equal in severity the criteria set forth for bronchitis in the Appendix.

On November 4, 1969, Dr. Joseph B. Woodson, a medical officer on the staff of the Bureau of Hearings and Appeals, and who is a specialist in psychiatry, reported that the record does not contain medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques to establish the existence of a psychiatric impairment medically the equivalent in severity and duration to any of the criteria listed in the Appendix.

---

1. Causalgia is defined as a burning sensation or pain, especially in the palms and soles, caused by injury to the nerves which carry impulses from these parts. In some cases, the skin undergoes deteriorative changes. Attorney's Dictionary of Medicine, Vol. 1, p. 161 (1969).

On November 5, 1969, Dr. Elba J. Martinez, a medical officer on the staff of the Bureau of Hearings and Appeals, who is a specialist in internal medicine, with a specialty in hematology, submitted the medical analysis of Drs. Brav, Montgomery, and Woodson for consideration by the Appeals Council. Dr. Martinez reported, concurring in the individual opinions of the above named doctors, that based upon the evidence demonstrable by medically acceptable clinical and laboratory diagnostic techniques, it had not been shown that Mrs. Wyatt suffers from an impairment or impairments that singly or in combination meet or equal in severity, and duration any of the attendant findings of the listed impairments in the Appendix to Subpart P of the Social Security Regulations Number 4.

The burden is upon the claimant to show disability. Griffey v. Cohen, 299 F.Supp. 714 (W.D.Va.1969) aff'd 421 F.2d 187 (4th Cir. 1970). § 205(g), 42 U.S.C. § 405(g) relating to judicial review, provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ." This is supported by the case law. Sabbagha v. Celebrezze, 345 F.2d 509 (4th Cir. 1965); Lewis v. Celebrezze, 359 F.2d 398 (4th Cir. 1966).

The entire record reveals Mrs. Wyatt to be a woman who has apparently had her share of life's hardships. She is the mother of nine children and the record reveals that her husband was disabled for some twenty years prior to his death. The medical evidence, however, does not reveal facts which would entitle her to receive disability benefits. She has not sustained her burden of proof. Griffey, supra, as applied in such cases.

Mrs. Wyatt suffered a back injury in July, 1967, for which she was not hospitalized. Aside from taking pills to control the pain associated with the injury, her only other treatment was to sleep on a board and to occasionally wear her son's back brace. Mrs. Wyatt appears to have recovered satisfactorily from her back injury and to have no residual disability therefrom. There is substantial evidence to support the finding of the Secretary that Mrs. Wyatt has no disability which would prevent her from engaging in gainful activity. The extensive physiological and psychological examinations which were given Mrs. Wyatt revealed essentially negative results. These examinations were reviewed by the Appeals Board's advisors who concurred in the determination of the examining physicians, and additionally noted that Mrs. Wyatt suffered from no impairment or impairments that singly or in combination met or equaled any of the impairments in the Appendix to Subpart P.

On November 13, 1969, the Appeals Council notified Mrs. Wyatt's attorney of the psychological and psychiatric reports they would consider, as well as the medical analysis which had been prepared by their medical advisors. Additional time was allowed to enable Mrs. Wyatt and her attorney to submit any additional evidence and comment. Neither additional evidence nor comment was submitted.

It is noted that the medical advisors' reports concur in some of the examining doctors' determination that Mrs. Wyatt was not suffering from a disability which would entitle her to benefits. Granting that the weight of their evidence might be somewhat suspect, the practice of using medical advisors in Social Security cases was approved in Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971). The report of Dr. Tice, the physician best in position here to give an opinion, would not support a recovery.

The record contains abundant substantial evidence which shows that Mrs. Wyatt is not suffering from physical or mental impairments which would entitle her to benefits and that any combination of impairment or impairments is not equivalent to any impairment which is listed in the Appendix to Subpart P.

**824**

The Secretary's decision to deny benefits is supported by substantial evidence and so must be approved. *Sabbagha,* supra.

An order is this day entered consistent with this opinion.