Francisca A. VELEZ, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant-Appellee.

No. 79–1111.

United States Court of Appeals,
First Circuit.

Submitted Sept. 14, 1979.

Decided Oct. 31, 1979.

---

8. We have not considered whether, with the Jones Act count eliminated, plaintiffs would be entitled to a jury trial.

Jorge R. Gonzalez, San Juan, P. R., on brief, for plaintiff-appellant.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R., William Kanter, Atty., Dept. of Justice, Washington, D. C., Borge Varmer, Regional Atty., and Leslie L. Clune, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, New York City, on brief, for defendant-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

■ This is an appeal from the denial of social security retirement benefits. The issue is whether there was substantial evidence to support the Secretary's finding that claimant was not an employee of her brother-in-law and, therefore, lacked sufficient quarters of coverage to be entitled to benefits.

*The Statute*

After reaching the age of sixty-two, claimant filed for old age social security benefits. Section 202(a) of the Social Security Act, 42 U.S.C. § 402(a), provides in effect that every individual who is fully insured, has attained the age of sixty-two, and has filed application for old age insurance benefits is entitled to those benefits.[1]

---

1. Section 202(a) of the Act, 42 U.S.C. § 402(a), provides in pertinent part:

   (a) Every individual who—
   (1) is a fully insured individual (as defined in section 414(a) of this title),
   (2) has attained age 62, and
   (3) has filed application for old-age insurance benefits or was entitled to disability insur-

ance benefits for the month preceding the month in which he attained the age of 65, shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits and ending with the month preceding the month in which he dies.

The phrase "fully insured" as applied here means that the claimant must have had not less than one quarter of coverage for each calendar year after 1950 up to the year in which she reached the age of sixty-two.[2] Since claimant filed for benefits in February of 1976, she had to establish one quarter of coverage for each year from 1951 to 1976 for a total of twenty-five quarters of coverage. Under section 213(a) of the Act, 42 U.S.C. § 413(a),[3] a person may be credited with a quarter of coverage for each calendar quarter in which she has been paid at least $50 as an employee. A "calendar quarter" means a period of three calendar months beginning the first day of January, April, July, and October of any year. Section 209 of the Act, 42 U.S.C. § 409,[4] defines the term "wages" to mean remuneration paid for employment. The term "employee" is defined in section 210(j) of the Act, 42 U.S.C. § 410(j),[5] as an individual who, under the usual common law rules applicable in determining an employer-employee relationship, has a status of an employee.

Our review of the administrative record is made within the confines of the substantial evidence standard. Section 205(g) of the Act, 42 U.S.C. § 405(g). The facts as disclosed by the record are as follows. Claimant lived with her elderly mother in their own house in Isabella, Puerto Rico. The house was located right next to that of her claimed employer, Juan Padilla-Feliciano, her brother-in-law. Claimant testified that she started working for Padilla in 1969 as a domestic and that she received $15 in cash per week for her services. She did a wide range of tasks, including cooking, washing, cleaning and taking care of the pigs and chickens. Claimant testified that she worked for her brother-in-law seven days a week. Her sister, Padilla's wife, helped her with some of the chores. Padilla testified that his wife had poor vision and "[i]f she does something, it comes out wrong because she has poor vision." The HEW investigators who visited claimant and her brother-in-law reported "that Padilla's wife appeared to be a strong woman who had no difficulty in moving about the house." According to claimant and her brother-in-law, she started working for him in 1969, after he had undergone extensive stomach surgery and could no longer take

2. Section 214 of the Act, 42 U.S.C. § 414(a) provides:

(a) The term "fully insured individual" means any individual who had not less than—
(1) one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, except that in no case shall an individual be a fully insured individual unless he has at least 6 quarters of coverage; or
(2) 40 quarters of coverage; or
(3) in the case of an individual who died before 1951, 6 quarters of coverage;
not counting as an elapsed year for purposes of paragraph (1) any year any part of which was included in a period of disability (as defined in section 416(i) of this title).

3. Section 213(a) of the Act, 42 U.S.C. § 413(a) provides in pertinent part:

(a) For the purposes of this subchapter—
(1) The term "quarter", and the term "calendar quarter", means a period of three calendar months ending on March 31, June 30, September 30, or December 31.

(2) The term "quarter of coverage" means a quarter in which the individual has been paid $50 or more in wages (except wages for agricultural labor paid after 1954) or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income[.]
This section of the Act was amended in 1977, but the amendment is of no consequence in this case.

4. Section 209 of the Act, 42 U.S.C. § 409, provides in pertinent part:

For the purposes of this subchapter, the term "wages" means remuneration paid prior to 1951 which was wages for the purposes of this subchapter under the law applicable to the payment of such remuneration, and remuneration paid after 1950 for employment, including the cash value of all remuneration paid in any medium other than cash[.]

5. Section 210(j) of the Act, 42 U.S.C. § 410(j), provides in pertinent part:

(j) The term "employee" means—
(1) any officer of a corporation; or
(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]

care of his house and small farm by himself. In addition to working seven days a week for her brother-in-law, claimant also took care of her invalid mother who, at the time of the hearing, was one hundred four years old.

The record is clear that Padilla did not have much of an income during the years he claimed to have paid claimant $15 a week. He received $93 and his wife $44 a month in social security benefits. Padilla, his wife, sister-in-law, and mother-in-law were treated as one household for food stamp purposes and got a monthly allotment of $172, for which they paid $41. His mother-in-law's welfare payments of $28 a month were turned over to Padilla. The only other income was from the occasional sale of fighting cocks, eggs and pigs. There is no evidence in the record as to the amount of income from this source. Padilla, according to claimant, is a spiritualist (medium) and some of his clients gave him gifts, but no money.

Claimant testified that neither she nor Padilla deducted any social security taxes from the weekly wages paid to her in cash. Padilla did file an employer's statement on February 26, 1976, showing payments to claimant of $180 for each calendar quarter of 1975. If this figure is accurate, then it means that claimant was actually paid less than $14 per week for that year.

Based on the foregoing facts, the administrative law judge found that "the claimant has not been under a bona fide employment relationship with the employer and that any remuneration she has received from him does not constitute wages under the Law." She also found:

> The employer is economically unable to pay the wages specified by law for her domestic services, and although claimant has helped him and her sister with household chores, it has been under strictly familial considerations and in exchange for some facilities or needs furnished to her and her ailing mother by Mr. Padilla.

The district court concluded that the findings of the Secretary were supported by substantial evidence. In his opinion, however, the district judge, contrary to the administrative law judge, found that claimant was paid $15 a week from Padilla. He further found that Padilla "made no direct Social Security payments, as he could not afford to do so."

■ Claimant argues that the district court's finding that she was actually paid $15 a week establishes an employer-employee relationship. We disagree. The administrative law judge's finding that the economic circumstances of Padilla made it impossible for him to pay his sister-in-law $15 a week regularly over a five year period as claimed is supported by substantial evidence and must therefore stand. Moreover, the payment of a sum of money alone does not establish an employer-employee relationship. That depends upon the common law rules, including the employer's right to discharge the employee and to control the work and activities of the employee.

■ In a case involving closely related and closely living individuals claiming an employer-employee relationship, the entire picture of the history and circumstances of the parties must be considered. *Sabbagha v. Celebrezze*, 345 F.2d 509 (4th Cir. 1965); *Palmer v. Celebrezze*, 334 F.2d 306 (3d Cir. 1964). The facts here show that claimant, her mother, her sister, and her brother-in-law lived as one family for some time prior to 1969. Padilla handled the money, and the claimant, with help from her sister both prior to and after his operation, did the household work. There is no doubt that, after Padilla's stomach operation, the claimant's work load increased because she had to take care of the livestock as well as do the household work. It is clear that claimant could not be discharged by her brother-in-law, and there is no evidence that he exercised any control over her. We find there was substantial evidence for the administrative law judge's finding that no employer-employee relationship existed between Padilla and claimant. Contrary to the district court, we also find that there was substantial evidence for the administrative law judge to conclude that Padilla

was economically unable to pay claimant $15 per week over the years in question.

█ Finally, we consider claimant's argument that the administrative process was unfair because she had no counsel. The hearing was conducted in Spanish, so that claimant's reliance on *Saldana v. Weinberger*, 421 F.Supp. 1127 (E.D.Pa.1976), is misplaced. In that case, there was an illiterate claimant who spoke only Spanish and the issue had to do with the submission of additional medical reports and the special earnings requirement of the Act. Claimant, here, was advised prior to the hearing and at the hearing of a right to have counsel. She stated that she would represent herself. The record of the hearing shows that the administrative law judge was fair in her questioning and gave claimant a full opportunity to present evidence and ask the witnesses any questions she wished. At the conclusion of the hearing, claimant stated that she was satisfied that everything of relevance had been put on the record. Claimant was evidently prepared for the hearing, since she brought with her an envelope allegedly containing tax forms and receipts going back to 1970. We find that the hearing was conducted fairly and see no prejudice in the fact that claimant was not represented by counsel. *Ramirez v. Secretary, Health, Education and Welfare*, 528 F.2d 902 (1st Cir. 1976); *Toledo v. Secretary, Health, Education and Welfare*, 435 F.2d 1297 (1st Cir. 1971).

While claimant and her family could certainly benefit from additional social security payments, the Social Security Act cannot be used to alleviate poverty unless its requirements are met.

*Affirmed.*